Harvey A. Strickon
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Attorneys for Garrison Special Opportunities
      Fund LP
75 East 55th Street
New York, NY 10022-3205
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090

HEARING DATE:  September 30 2009 at 9:30 a.m.
OBJECTION DEADLINE:  September 23, 2009 at
 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| YL West 87th Holdings I LLC | Case No. 09-15445 (AJG) |
| Debtor. | |

## MOTION OF GARRISON SPECIAL OPPORTUNITIES FUND LP
## FOR RELIEF FROM THE AUTOMATIC STAY

      Garrison Special Opportunities Fund LP, a Delaware limited partnership

("**Garrison**"), by its attorneys, Paul, Hastings, Janofsky & Walker LLP, respectfully moves this

Court (the "**Motion**") for the entry of an order pursuant to sections 362(d) of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure granting Garrison relief from the automatic stay to enforce its security

interests with respect to collateral pursuant to that certain Mezzanine Pledge and Security

Agreement (the "**Pledge Agreement**") dated as of September 20, 2007 between Garrison and YL

West 87th Holdings I LLC, a Delaware limited liability company (the "**Debtor**"), and in support

of thereof respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor's filing of its voluntary petition for reorganization under Chapter 11 (the "**Petition**") on the very eve of the Foreclosure Sale (defined hereinafter) is a sham. The filing was made in bad faith and was nothing more than a last-ditch effort to forestall Garrison's foreclosure on the Collateral (defined hereinafter). Garrison is the Debtor's sole creditor and is secured by the Debtor's sole asset. Not only is there nothing to reorganize, but it would be impossible for the Debtor to obtain confirmation of any reorganization plan without Garrison's favorable vote.

2.      Garrison and the Debtor are parties to a Loan Agreement (defined hereinafter) pursuant to which the Debtor is indebted to Garrison in the aggregate amount of approximately $20,000,000.00. After the Debtor defaulted on its interest payments, Garrison accelerated the indebtedness and exercised its contractual remedies by scheduling a public auction sale (the "**Sale**" or the "**Foreclosure Sale**") of the Collateral. The Sale was scheduled for September 10, 2009 in accordance with the Revised Article 9 of the New York Uniform Commercial Code ("**UCC**"). Despite having received notice of the Sale in July, the Debtor delayed until September 8, 2009, just two days prior to the Sale, the filing of a motion in the Supreme Court, New York County, seeking to enjoin the Sale. Obviously concluding that no legal or factual basis existed for the issuance of any preliminary injunction, the Supreme Court conditioned the granting of a temporary restraining order ("**TRO**") upon the Debtor posting a bond of $20,000,000.00 by 4:30 p.m. on September 9, 2009. Incapable of posting the required bond on the eve of the Sale, and with foreclosure on the Collateral imminent and determined to stop the Sale from proceeding, the Debtor threw together a bare-bones Petition at the last minute, which it filed at 5:04 p.m. on September 9, 2009. The filing of the Petition not only represents the

Debtor's bad faith attempt to hinder Garrison's lawful exercise of its contractual remedies, but it is also a brazen abuse of the United States bankruptcy process.

<u>**JURISDICTION**</u>

3.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

<u>**BACKGROUND**</u>

4.       On September 20, 2007, Column Financial Inc., a Delaware Corporation ("**Column**"), made a loan to the Debtor in the amount of $20,000,000.00 (the "**Loan**").  The Loan was funded pursuant to the terms of that certain Mezzanine Loan Agreement (the "**Loan Agreement**"), dated and effective as of September 20, 2007, between Column and the Debtor. A copy of that agreement is attached hereto as <u>Exhibit A</u>.  The Loan was evidenced by that certain Promissory Note, dated September 20, 2007, in the original principal amount of $20,000,000.00, from YL to the order of Column (the "**Note**").  A copy of the Note is attached hereto as <u>Exhibit B</u>.  The Loan was secured by collateral pledged pursuant to the Pledge Agreement.  A copy of the Pledge Agreement is attached hereto as <u>Exhibit C</u>.  The "**Collateral**" consists of the Debtor's membership interest in a single business entity (the "**Property Owner**"), constituting 100% of the outstanding membership interests of that entity.  The Property Owner's sole asset consists of a residential building (the "**Property**"), which was to undergo construction and be converted into condominiums (the "**Project**").

5.       Column assigned to Garrison, by that certain Omnibus Assignment and Assumption Agreement dated September 20, 2007 (the "**Assignment Agreement**"), the Note, together with all documents entered into between Column and the Debtor in connection with the Loan (collectively, the "**Loan Documents**").  A copy of the Assignment Agreement is attached

hereto as <u>Exhibit D</u>.  As such, Garrison succeeded to all of the right, title and interest of Column in and to the Loan Documents.  Under the Loan Agreement, the Debtor was obligated to pay Garrison regularly scheduled monthly debt service payments of interest on the ninth day of every calendar month ("**Debt Service**").

6.      The Debtor failed to pay the regularly scheduled monthly Debt Service payment for April 2009, which was due on April 9, 2009.  The Debtor also failed to pay the regularly scheduled monthly Debt Service payment for May 2009, which was due on May 9, 2009.  Thereafter, Garrison notified the Debtor by letter dated June 8, 2009 that it had committed an event of default pursuant to Section 9.1(a)(i)(B) of the Mezzanine Loan Agreement due to its failure to pay the regularly scheduled monthly debt service payment for April 2009 and for May 2009.

7.      As of now, the Debtor has failed to pay the regularly scheduled monthly Debt Service payments for April 2009, May 2009, June 2009, July 2009 and August 2009 (each an "**Outstanding Debt Service Payment**").  Those amounts remain due and payable.  Each Outstanding Debt Service Payment has caused the occurrence and continuation of a separate event of default under the Loan Documents (a "**Default**").  The onset of the global economic crisis has caused the Property to lose much of its value, which has wiped out any equity the Debtor may have had in the Collateral.  Furthermore, in part because construction on the Project has ceased, the Debtor receives no cash flow.

8.      By letter dated July 21, 2009 (the "**Acceleration Notice**"), Garrison notified YL that it had accelerated the maturity of the Note and demanded immediate payment in full of the indebtedness of the Loan Agreement, as defined in Section 1.1 of that agreement.  A copy of that

letter is attached hereto as <u>Exhibit E</u>.  As of now, the Debtor has not made full payment of the indebtedness under the Loan Agreement to Garrison.

9.      Pursuant to Section 9.2.1(f) of the Loan Agreement and Section 9(a)(i) of the Pledge Agreement, and in accordance with Revised Article 9 of the UCC, by letter dated July 28, 2009 sent by certified mail (return receipt requested), Garrison sent the Debtor a notice of sale (the "**Notification of Disposition**"), advising it that on September 10, 2009, Garrison would be holding a foreclosure sale of the Collateral at a public auction.  A copy of that letter is attached hereto as <u>Exhibit F</u>.

10.     On August 28, 2009, in accordance with Revised Article 9 of the UCC, Garrison caused a notice of secured party sale (the "**Advertisement**") to be published nationwide in the New York Times.  On September 3, 2009, Garrison again caused the Advertisement to be published nationwide in the New York Times.  On September 5, 2009, Garrison caused the Advertisement to be published in the Real Estate Weekly newspaper.  On September 8, 2009, Garrison caused the Advertisement to be published nationwide in the New York Times for a third time.  Copies of the Advertisement and affidavits of publication from both the New York Times and Real Estate Weekly are attached hereto as <u>Exhibit G</u>.

11.     On September 8, 2008, the Debtor filed an emergency motion and proposed "**Order to Show Cause**" with the Supreme Court, New York County, Index No. 09-111972, whereby the Debtor sought a preliminary injunction to stay the Foreclosure Sale.  The Order to Show Cause and accompanying documents are attached hereto as <u>Exhibit H</u>.  That day, the motion was argued before Mr. Justice James A. Yates.  Mr. Justice Yates effectively refused to grant a TRO by conditioning it upon the Debtor posting a bond of $20,000,000.00 by 4:30 p.m.

on September 9, 2009, failing which the Sale could proceed as scheduled (the "**Order**").  A copy

of the Order is attached hereto as Exhibit I.

12.     On September 9, 2009, at 5:04pm, the Debtor filed its voluntary Petition for

reorganization under Chapter 11 of the Bankruptcy Code.

**RELIEF REQUESTED**

13.     By this Motion, Garrison respectfully requests entry of an order terminating the

automatic stay under section 362(d) of the Bankruptcy Code with respect to the Collateral to

allow Garrison to exercise its state law rights and remedies against the Collateral, including,

without limitation, the rights of foreclosure, liquidation, replevin, credit bid, setoff or private

sales.  Garrison further requests that any order granting this Motion not be stayed under

Bankruptcy Rule 4001(a)(3), but be effective and enforceable immediately upon entry.  For the

reasons stated herein, cause exists under section 362(d)(1) of the Bankruptcy Code and grounds

exist under section 362(d)(2) of the Bankruptcy Code to terminate the automatic stay as

requested above.

**GARRISON IS ENTITLED TO RELIEF**
**UNDER SECTION 362(d) OF THE BANKRUPTCY CODE**

14.     To pursue its remedies under the Loan Documents, Garrison is entitled to relief

from the automatic stay under section 362(d) of the Bankruptcy Code.  Section 362(d)(1) of the

Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in
> > property of such party in interest. . . .

In *In re Balco*, the Southern District Court of New York held that cause "may be found based on unenumerated factors, including 'bad faith.'" 312 B.R. 734, 748 (Bkcy. S. D. N.Y. 2004). According to the court, the factors indicative of bad faith are as follows:

(i)     The debtor has only one asset;

(ii)    The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(iii)   The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(iv)   The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(v)    The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(vi)   The debtor has little or no cash flow;

(vii)  The debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(viii) The debtor has no employees. *Id.* at 753.

15.     Cause exists to grant Garrison relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code because the weight of the aforementioned factors clearly indicates that the Debtor acted in bad faith: (i) the Debtor has only one asset—the Collateral (*supra* ¶4); (ii) the Debtor has no creditors other than Garrison, whose claim is secured by 100% of the Collateral (see *id.*); (iii) as a result of the Debtor's multiple Defaults, the Collateral became the subject of the Foreclosure Sale (*supra* ¶¶6–10); (iv) this is a two party dispute between Garrison, as secured lender, and the Debtor, as borrower, under the Loan Documents (*supra* ¶¶4–5); (v) the events leading up to the filing of the Petition and, most notably, the Debtor's filing of the Petition on the eve of the Foreclosure Sale, clearly evinces the Debtor's intent to prevent the Foreclosure Sale from occurring the very next morning (see *supra* ¶¶10–13); (vi) the Debtor has no cash flow as a result of the halt in construction on the Property (*see*

*supra* ¶7); (vii) the Debtor has ceased making monthly Debt Service payments (*supra* ¶¶6–8); and (viii) the Debtor has no business or employees. The weight of the factors clearly indicates that the Debtor acted in bad faith when it filed the Petition.

16. Section 362(d)(2) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if - -
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization; . . .

17. As was indicated above, the Debtor has no equity in the Collateral (*supra* ¶7). As the Debtor's sole asset, the Collateral is not necessary to and there cannot be "an effective reorganization" (*supra* ¶1). Furthermore, absent a cram down, confirmation of a reorganization plan is impossible, as such confirmation would require Garrison's favorable vote. Thus, grounds also exist under section 362(d)(2) to terminate the automatic stay.

18. If this Court enters an order granting Garrison relief from the automatic stay, Garrison respectfully requests that this Court waive the 10-day stay provided under Fed. R. Bankr. P. 4001(a)(3).

19. As there are no unique or novel issues presented by this Motion, Garrison has incorporated its memorandum of law into this Motion and has not filed a separate memorandum of law.

20. Notice of this Motion has been provided to: (i) the Debtor, the United States Trustee, and their respective attorneys, (ii) all parties who have filed notices of appearance or requests for notice in this case as of the date of this Motion, and (iii) all other parties required by

the Federal Rules of Bankruptcy Procedure and Local Rules.  Garrison submits that no other or

further notice need be provided.

21.     No previous motion or application for the relief sought herein has been made to

this or any other Court.

## <u>CONCLUSION</u>

WHEREFORE, Garrison respectfully requests that this Court grant it:

1.     Relief from the automatic stay as requested herein; and

2.     Such other relief that this Court deems just and proper.

Dated: New York, New York
      September 14, 2009

                    Respectfully Submitted,

                    PAUL, HASTINGS, JANOFSKY & WALKER LLP

                    By:  _____/s/ Harvey A. Strickon_____
                              Harvey A. Strickon
                    Attorneys for Garrison Special Opportunities Fund LP
                    75 East 55th Street
                    New York, NY 10022
                    Telephone:  (212) 318-6000
                    Facsimile:  (212) 318-7689