ARKO HOLDINGS LTD.
27 HaBarzel St.
Tel Aviv, Israel 69710
Phone: 972-3-7687805; Fax: 972-3-7687887

November 6, 2009

YL West 87th Holdings I LLC and YL West 87th Street, LLC
Attn: Mr. Yair Levy
101 West 87th Street
New York, NY 10024

**RE: Loan Commitment to YL West 87th Holdings I LLC and YL West 87th Street, LLC**

Dear Mr. Levy:

This Commitment Letter amends and restates in its entirety the Commitment dated November 3, 2009 between the parties herein.

This document will serve as a Loan Commitment outlining the terms upon which ARKO Holdings, Ltd., an Israeli public company and/or its assignees, affiliates, related entities and/or co-investors ("Lender") would be willing to provide a debtor in possession super-priority loan (the "Loan") to YL West 87th Holdings I LLC and YL West 87th Street, LLC (collectively, "Borrower") to be jointly administered in Case #_____ in the U.S. Bankruptcy Court for the Southern District of New York ("Court").

I. **LENDER**: ARKO Holdings, Ltd., an Israeli public company and/or its assignees, affiliates, partners and/or related entities.

II. **BORROWER**: YL West 87th Holdings I LLC and YL West 87th Street, LLC, each with an address of 101 West 87th Street, New York NY 10024.

III. **LOAN AMOUNT**: Up to $30,000,000.00 Loan (the "Loan Amount"), to be used to complete construction of the approximately 108,000 square foot condominium project known as Park Columbus and located at 101 West 87th Street, New York NY (the "Project"), in accordance with a budget and schedule to be approved by Lender in its sole discretion.

IV. **Collateral**: The Loan will have super-priority status under the Borrower's bankruptcy pursuant to Section 364(c)(1) of the U.S. Bankruptcy Code and additionally be secured by a senior lien on the property and assets of Borrower's estate pursuant to Section 364(d) of the U.S. Bankruptcy Code, which collateral shall include, without limitation, the Project.

1

V. **COMMITMENT FEE**: Three percent (3%) of the Loan Amount, which amount shall be deemed earned upon execution of this Commitment Letter and approval by the Court and Lender's Board of Directors of this Commitment Letter, and which shall be payable from the first dollars funded under the Loan. In the event that this Loan Commitment fails to close and/or be funded for any reason whatsoever other than as a result of Lender's breach of the terms hereof or Lender's election not to fund following Lender's due diligence, the Commitment Fee shall continue to be owed to Lender by Borrower in consideration of Lender's issuance of this Loan Commitment, and shall be payable to Lender as soon as Borrower has the financial ability to make such payments, but in any event immediately upon either the confirmation of a plan of reorganization or liquidation, and/or from the proceeds of sale of any of Lender's collateral. Upon Court approval of this Loan Commitment, Borrower's obligation to pay such amount shall be given super-priority status pursuant to Section 364(c)(1) of the U.S. Bankruptcy Code and additionally be secured by a senior lien on the property and assets of Borrower's estate pursuant to Section 364(d) of the U.S. Bankruptcy Code.

VI. **OTHER FEES:** Borrower shall be obligated to pay all of Lender's reasonable attorneys' fees and other due diligence expenses relative to the Loan, which amounts shall be owed regardless as to whether or not the Loan is closed and/or funded. To the extent feasible, Borrower shall pay all such fees and expenses directly to Borrower's attorneys, consultants and advisors, and shall contract directly with such persons to be obligated to pay same and any and all retainers reasonably required in connection therewith. Upon execution of this Commitment Letter, Borrower shall deposit with Lender the sum of $50,000, which shall be applied toward payment of such fees and expenses to extent Borrower fails to pay such amounts in breach of this Commitment Letter. Borrower shall additionally make further advance payments toward such fees and expenses to the extent reasonably required by Lender. Lender shall not be required to fund such amounts out of pocket. Any such amounts advanced by Borrower and not expended shall be refunded to Borrower and/or applied toward the Loan Amount.

VII. **LOAN TERM:** The earliest of (i) 180 days from the execution of the loan documents and/or the first date of funding under the Loan, (ii) an Event of Default under the loan documents, (iii) the filing of a plan of reorganization or liquidation which does not provide for the payment in full of Borrower's obligations under the Loan (inclusive of the Exit Fee provided below), (iv) the sale of any of Lender's collateral without Lender's consent in its sole discretion outside of a plan of reorganization, or (v) the date of approval by the court of a plan of reorganization in the existing bankruptcy of the Borrower, provided that in the event of such court approval of a plan of reorganization which is also approved by Lender in its sole discretion, the Loan will be extended for an additional 12 months.

VIII. **INTEREST RATE**: 15% fixed annual rate, compound monthly. The Loan Amount includes a six (6) month interest reserve which will be funded on a monthly basis. Accrued interest shall be added to the outstanding loan balance.

IX. **REPAYMENT**: The Loan, or a portion thereof, may be repaid at any time. All available cash flow from the Borrower shall be used to pay first interest and second to pay principal on the Loan.

X. **LOAN DOCUMENTS**: This Loan Commitment shall be subject to the execution and delivery of loan documents satisfactory to Lender in its sole discretion.

XI. **DUE DILIGENCE**: This Loan Commitment shall be subject to Lender's satisfaction in its sole discretion with its due diligence, which Lender anticipates should require no more than 15 business days from receiving approval of this Loan Commitment by the Court and from Lender's Board of Directors.

XII. **EXIT FEE**: Borrower shall be additionally obligated to pay Lender an exit fee in the amount of six percent (6%) of the Loan Amount, but no less than $1.8 Million, upon the Borrower's filing of a plan of reorganization or liquidation which is not approved by Lender in its sole discretion. The Exit Fee shall be waived by Lender in the event that the Borrower is successful in effectuating a plan of reorganization that is approved by the Court, the Borrower and the Lender in its sole discretion.

XIII. **JURISDICTION AND BANKRUPTCY COURT APPROVAL**: Until such time as the Borrower emerges from Chapter 11, the Court shall have full jurisdiction over this loan.

XIV. **BINDING AGREEMENT**: The Lender and Borrower agree that, subject to the other conditions provided for herein and approval of the Court and Lender's Board of Directors (the Board of Director vote on this Loan Commitment, subject to the terms and provisions provided for herein, is anticipated to occur within five (5) business days of obtaining Court approval), this Loan Commitment will be binding on the parties.

XV. **ENTIRE AGREEMENT**: No change or modification of this Loan Commitment shall be valid unless agreed to in writing by Lender and Borrower.

We at ARKO Holdings, Ltd. look forward to working with you.

Sincerely,

Arie Kottler     Efrat Hybloom-Klein
CEO     CFO

AGREED AND ACCEPTED:

YL WEST 87th HOLDINGS, LLC

By: _____ 11/11/09
    Mr. Yair Levy

3

Title: _____

YL WEST 87th STREET, LLC

By: _____  11/11/09
   Mr. Yair Levy
Title: _____